UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:20-CV-00828-RSE

**CYNTHIA B. WARDLOW**                                                                                                                        **PLAINTIFF**

**VS.**

**KILOLO KIJAKAZI,**
*Acting Commissioner of Social Security*                                                    **DEFENDANT**

<u>**MEMORANDUM OPINION
AND ORDER**</u>

The Commissioner of Social Security denied Cynthia B. Wardlow's applications for disability insurance benefits and supplemental security income benefits. Wardlow presently seeks judicial review of the Commissioner's denial pursuant to 42 U.S.C. § 405(g). Both Wardlow (DN 22) and the Commissioner (DN 28) have filed a Fact and Law Summary. The parties have consented, under 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, to the undersigned United States Magistrate Judge conducting all further proceedings in this case, including issuance of a memorandum opinion and entry of judgment, with direct review by the Sixth Circuit Court of Appeals in the event an appeal is filed. (DN 20).

<u>I. Background</u>

Cynthia Wardlow is in her late forties and has a high school education. (Tr. 61). Wardlow lives with her grown children and grandchildren and relies on them for transportation and support. (Tr. 32). Prior to July of 2019, Wardlow was smoking three packs of cigarettes per day. She cut down to half-a-pack a day and eventually cut down to five cigarettes a day. (Tr. 65). Wardlow reports great anxiety when she is around a lot of people. (Tr. 69). Sometimes this anxiety causes seizure-like episodes. (Tr. 66-69). Wardlow also suffers from bad headaches, which can also cause

seizure-like episodes if she can't get medication in time. (Tr. 72). Her previous work includes gas station attendant, hotel clerk, and product inspector/packer at a warehouse. (Tr. 33-37, 61). In October of 2017, Wardlow was performing temporary work for Nesco Resources when she allegedly suffered six seizures in a row and broke her foot. (Tr. 66-67). She stopped working following that incident.

Wardlow applied for supplemental security income benefits ("SSI") under Title XVI on November 15, 2017 (Tr. 232) and applied for disability insurance benefits ("DIB") under Title II on February 4, 2019 (Tr. 335). On both applications, Wardlow alleged disability beginning October 20, 2015 due to epilepsy/seizures and depression. (Tr. 257). Wardlow later amended her alleged onset date for both applications to October 3, 2017. (Tr. 249). Her application for SSI benefits was denied initially and again on reconsideration (Tr. 107, 114).

When Wardlow filed her application for DIB in February of 2019, she requested her claim be escalated to the hearing level to be considered with her SSI claim. (Tr. 335). Administrative Law Judge Jonathon Stanley ("ALJ Stanley") conducted a hearing in Lexington, Kentucky on September 17, 2019. (Tr. 54). Wardlow appeared in person with her attorney. (*Id.*). An impartial vocational expert also appeared at the hearing. (*Id.*). Wardlow was initially responsive to questions from ALJ Stanley and from her representative. But while the vocational expert was testifying, Wardlow had to be escorted out of the room in a wheelchair. (Tr. 76).

Wardlow's administrative hearing before ALJ Stanley was continued on February 19, 2020. (Tr. 28). Again, Wardlow, her attorney, and an impartial vocational expert appeared and provided testimony. (*Id.*). ALJ Stanley issued an unfavorable decision on April 10, 2020. (Tr. 21).

ALJ Stanley applied the traditional five-step sequential analysis promulgated by the Commissioner, 20 C.F.R. § 404.1520, *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 855 (6th Cir.

2010), and found as follows. First, Wardlow has not engaged in substantial gainful activity since October 3, 2017, her amended alleged onset date. (Tr. 15). Second, Wardlow has the severe impairments of seizure disorder/psychogenic seizures. (*Id.*). Third, none of Wardlow's impairments or combination of impairments meets or medically equals the severity of a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App'x 1. (Tr. 16). Between the third and fourth steps, ALJ Stanley found Wardlow has the residual functional capacity (RFC) to perform a full range of work at all exertional levels but with the following non-exertional limitations:

> The claimant can perform work at all exertional levels except she can occasionally climb stairs and ramps, but cannot climb ropes, ladders, and scaffolds; can occasionally balance, stoop, kneel, crouch and crawl; can frequently reach overhead; cannot operate commercial vehicles; and cannot work at unprotected heights or around hazards such as heavy equipment.

(Tr. 17). Fourth, Wardlow can perform her past relevant work as a factory clerk, hotel clerk, hand packer, and self-service gas station cashier because this work does not require performance of work-related activities precluded by her RFC. (Tr. 19). ALJ Stanley found that based on the VE's testimony, and considering Wardlow's age, education, work experience, and RFC, she is capable of successfully adjusting to other work that exists in significant numbers on the national economy. (Tr. 21). A finding of "not disabled," ALJ Stanley concluded, was appropriate under section 204.00 of the Medical-Vocational Guidelines. (*Id.*).

Based on this evaluation, ALJ Stanley found that Wardlow has not been under a disability, as defined in the Social Security Act, since October 3, 2017, the date her application was filed. (Tr. 21). Wardlow administratively appealed ALJ Stanley's decision. (Tr. 228-30). The Appeals Council considered Wardlow's disagreement with ALJ Stanley's decision but declined review because her reasons did not provide a basis for changing the decision. (Tr. 1). At that point, the

denial became the final decision of the Commissioner, and Wardlow appealed to this Court. (DN 1).

## II. Standard of Review

Administrative Law Judges make determinations as to social security disability by undertaking the five-step sequential evaluation process mandated by the regulations. *Vance v. Comm'r of Soc. Sec.*, 260 F. App'x 801, 803-04 (6th Cir. 2008) (citing *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990)); 20 C.F.R. §§ 404.1520(b), 416.920(b). Throughout this process, the claimant bears the overall burden of establishing that they are disabled; however, the Commissioner bears the burden of establishing the claimant can perform other work existing in significant numbers in the national economy. *Id.* at 804 (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004)).

When reviewing the Administrative Law Judge's decision to deny disability benefits, the Court may "not try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). Instead, the Court's review of the Administrative Law Judge's decision is limited to an inquiry as to whether the Administrative Law Judge's findings were supported by substantial evidence, 42 U.S.C. § 405(g); *Foster v. Halter*, 279 F.3d 348, 353 (6th Cir. 2001) (citations omitted), and whether the Administrative Law Judge employed the proper legal standards in reaching his conclusion. *See Landsaw v. Sec'y of Health & Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence exists "when a reasonable mind could accept the evidence as adequate to support the challenged conclusion, even if that evidence could support a decision the other way." *Cotton v. Sullivan*, 2 F.3d 692, 695 (6th Cir. 1993). The Supreme Court has clarified

that "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high[.]" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted).

### III. Analysis

Wardlow posits that two aspects of ALJ Stanley's RFC determination are not supported by substantial evidence in the case record. A claimant's RFC is defined as the "maximum degree to which the individual retains the capacity for sustained performance of the physical-mental requirements of jobs." 20 C.F.R. Pt. 404, Subpt. P, App. 2 § 200.00(c). Put otherwise, the RFC is the most a claimant can do despite their physical and mental limitations. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). An ALJ bases their RFC determination on "all of the relevant medical and other evidence" in the case record. *Id.* (a)(3). This requires the ALJ to evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations. 20 C.F.R. §§ 404.1520c, 404.1529(a).

#### A. ALJ Stanley's Evaluation of Dr. Fishkoff's Opinion

Wardlow first argues that ALJ Stanley failed to properly evaluate the consultative opinion of Jennifer Fishkoff, Psy.D. (DN 22-1, at PageID # 763-64). Wardlow advances that Dr. Fishkoff's opinion is well-supported by her observation notes and examination. Dr. Fishkoff's opinion, Wardlow continues, is consistent with other physician's findings regarding her seizures, including Dr. Eichhorn, PA Lee of the Emergency Department, Dr. Reloj, and APRN Corbett. (*Id.* at PageID # 767-68). Wardlow further takes issue with ALJ Stanley's failure to consider that she experienced a seizure during Dr. Fishkoff's examination that lasted five minutes and left her feeling fatigued, disoriented, confused, and unable to continue with the examination. (*Id.* at PageID # 766).

The Commissioner responds that ALJ Stanley "thoughtfully considered" Dr. Fishkoff's opinion before concluding that the severe or marked limitations concerning Wardlow's adaptation

and relating were not supported by the evidence or consistent with other evidence in the record. (DN 28, at PageID # 798). The Commissioner points out that the seizure Wardlow experienced during Dr. Fishkoff's examination resulted in Dr. Fishkoff being unable to make a formal assessment of Wardlow's short-term memory, concentration, and recall. (*Id.*). Though conceding that ALJ Stanley did not discuss the supportability of Dr. Fishkoff's opinion at length, the Commissioner maintains that ALJ Stanley's decision "states enough for the court to discern the factors he considered," especially given that he found the state reviewing psychologist reports to be persuasive. (*Id.* at PageID # 799).

Dr. Fishkoff performed a one-time consultative examination of Wardlow on February 27, 2018. (Tr. 400-05). Dr. Fishkoff's observations on exam mostly include her repeating Wardlow's subjective complaints and recounting progress notes from other providers. Dr. Fishkoff did, however, observe Wardlow's anxious mood, restricted affect, thoughts and speech being "sequential, goal directed, clear and coherent," and "thought content [as being] unremarkable for any delusional thinking, no psychosis, and no signs of schizophrenic thinking." (Tr. 401). Dr. Fishkoff also noted that Wardlow became increasingly confused and anxious as the exam progressed and after about thirty minutes of answering questions went into a seizure. (Tr. 402). Dr. Fishkoff reported that Wardlow was unable to answer any questions following the seizure due to fatigue and confusion. (*Id.*).

Following her exam, Dr. Fishkoff diagnosed Wardlow with unspecified anxiety disorder, adjustment disorder with depressed mood, seizure disorder, and possible mild neurocognitive disorder. (Tr. 404). Dr. Fishkoff noted Wardlow's prognosis was "guarded" and that her impairments appear to be long term and chronic. (*Id.* at Tr. 404-05). Wardlow's anxiety, Dr. Fishkoff determined, brings on her seizures. (Tr. 405). Dr. Fishkoff opined that Wardlow is

severely impaired in her ability to tolerate frustration, conform to social standards, and maintain employment and is markedly impaired in her ability to tolerate the stress and pressures associated with day-to-day work activity. (Tr. 405). But Dr. Fishkoff opined only mild impairment as to Wardlow's ability to understand, retain, and follow instructions as required during an eight-hour workday and her ability to sustain attention to perform simple and repetitive tasks. (*Id.*).

ALJ Stanley found Dr. Fishkoff's opinion was "not persuasive" in that she concluded Wardlow had severe or marked limitations with adaptation and relating. (Tr. 19). These restrictions, ALJ Stanley noted, are not supported by evidence of record or consistent with the opinions at Exhibits 1A, 4A, and Dr. Allaham's findings. (*Id.*).

In this case, the new regulations for evaluating medical opinion evidence apply because Wardlow filed her applications for supplemental security income benefits and disability insurance benefits after March 27, 2017. *See* 20 C.F.R. § 404.1520c. The new regulations specify that an ALJ will not give any specific evidentiary weight to any medical opinion, even the opinions of a claimant's treating physician. *Id.* ALJs now evaluate the "persuasiveness" of medical opinions using five factors: (1) supportability; (2) consistency; (3) relationship to the claimant; (4) specialization; and (5) other factors. *Id.* (c)(1)-(5). Of these factors, supportability and consistency are the most important. *Id.* (a), (b)(2). The regulations, accordingly, require ALJs to explain how they considered the supportability and consistency factors in their determination. *Id.* (b)(2). Comparatively, ALJs "may, but are not required to, explain" their consideration of factors (3)-(5). *Id.*

In assessing a medical opinion's "supportability," "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. §

7

404.1520c(c)(1). And the "consistency" factor denotes the extent to which the medical opinion "is consistent with the evidence from other medical sources and nonmedical sources in the claim[.]" *Id.* (c)(2).

Albeit brief, ALJ Stanley's analysis complies with 20 C.F.R. § 404.1520c and is supported by substantial evidence in the record. As for the consistency of Dr. Fishkoff's severe and marked restrictions with other record evidence, ALJ Stanley specifically referenced the State Agency opinions at Exhibits 1A and 4A and Dr. John Allaham's treatment records at Exhibits 4F, 5F, and 9F. Though Dr. Stanley's mention of Dr. Allaham's records in assessing weight to Dr. Fishkoff's opinion was concise, he thoroughly discussed Dr. Allaham's treatment records earlier in his RFC determination. *See, Forrest v. Comm'r of Soc. Sec.*, 591 F. App'x 359, 366 (6th Cir. 2014) (recognizing that the ALJ's analysis may be found throughout the decision).

ALJ Stanley twice called attention to Dr. Allaham's conclusion that Wardlow was "considered fully employable without evidence for psychiatric disability." (Tr. 18-19). ALJ Stanley also recognized that during objective mental examinations from February of 2018 through 2019, Dr. Allaham consistently found that Wardlow had euthymic mood, with slight anxious to anxious affect and occasional depression. (Tr. 18). Review of Dr. Allaham's records also reveals repeated objective findings that Wardlow was alert, attentive, had normal speech rate, pattern, and tone, had no looseness of associations, had no delusions, hallucinations, obsessions, or compulsions, had coherent logical thoughts, a good fund of knowledge, and intact memory. (Tr. 409-09; 411-12; 418; 421; 424; 519; 522; 525). Dr. Allaham's largely stable findings on objective exam are inconsistent with Dr. Fishkoff's "severe" and "marked" limitations on Wardlow's ability to adapt and relate in a work setting.

8

The State Agency psychologists on initial review and reconsideration both relied on Dr. Allaham's largely unremarkable objective findings in concluding that Wardlow was only mildly limited in all areas of mental functioning and capable of performing work at all exertional levels. ALJ Stanley separately assessed the State Agency psychologists' opinions, finding they were supported by medical evidence in the record, including Dr. Allaham's objective findings. Again, reference to these opinions and medical evidence elsewhere in the record supports ALJ Stanley's conclusion that Dr. Fishkoff's restrictive limitations were not consistent with the totality of evidence in the record.

The same analysis can be applied to ALJ Stanley's evaluation of the supportability of Dr. Fishkoff's opinion. Although ALJ Stanley only stated that Dr. Fishkoff's conclusions that Wardlow had severe or marked limitations with adaptation and relating were not supported, the Court again finds further explanation in other portions of ALJ Stanley's RFC determination. For instance, ALJ Stanley noted that Wardlow has reportedly had "convulsive activity" since 2004 but that diagnostic imaging and scans including CTs of the head and EEGs were normal. (Tr. 18). ALJ Stanley discussed how Wardlow's treatment with Zoloft was beneficial. (*Id.*). Notable also was ALJ Stanley's description of Dr. Allaham's records, reflecting that in April of 2018 Wardlow was feeling better overall with decreasing symptoms and episodes of pseudo seizures and less depression and anxiety. (*Id.*). By July of 2018, Dr. Allaham had referred Wardlow to psychotherapy. (*Id.*). And although she was hospitalized the next month after a seizure, Wardlow reported noncompliance with her medication. (*Id.*). Dr. Allaham's treatment records in early 2019 further demonstrate Wardlow's improvement with treatment. ALJ Stanley finally noted record of a therapy session Wardlow attended in February of 2020, where she was cooperative and attentive with no gross behavioral abnormalities. (*Id.*). ALJ Stanley's thorough evaluation of the medical

evidence constitutes substantial evidence for his finding that Dr. Fishkoff's severe and marked mental functioning restrictions were not supported by the medical record.

B. ALJ Stanley's Failure to Address the Mild Limitations from Step Two

Wardlow next contends that ALJ Stanley failed to incorporate his Step Two findings, that Wardlow had mild limitations in understanding, remembering or applying information; in interacting with others; in concentrating, persisting, or maintaining pace; and in adapting or managing oneself, into his RFC determination. (DN 22-1, at PageID # 773). Under the regulations, Wardlow argues, ALJ Stanley was required to consider all limitations from her impairments, including those deemed non-severe, and the effect of such limitations. (*Id.*). Because ALJ Stanley did not discuss what evidence he relied upon in disregarding her mental limitations identified at Step Two, Wardlow claims he failed to "build an accurate and logical bridge" between evidence of Wardlow's depression, the ALJ's mild limitations, and an RFC with no limitations relating to depression. (*Id.* at PageID # 774-76).

The Commissioner submits that Wardlow is merely asking the Court to reweigh evidence relating to her alleged mental impairments and decide the case differently, which extends beyond the purview of substantial-evidence review. (DN 28, at PageID # 804-05). Contrary to Wardlow's suggestion, the Commissioner argues ALJ Stanley continued evaluating Wardlow's alleged mental impairments in his RFC determination. (*Id.* at PageID # 802).

Wardlow's argument, that an ALJ's findings at Steps Two, which address whether an impairment should be considered severe, must be incorporated by the RFC, is unsupported by case law. *See, e.g. Fannin v. Berryhill*, No. 3:17-cv-236-DCP, 2019 WL 1434653, at *10 (E.D. Tenn. Mar. 29, 2019) (quoting *Hayman v. Berryhill*, No. 3:16-cv-1998, 2017 WL 9476860, at *9 (N.D. Ohio Oct. 30, 2017) (finding that an ALJ's step three and RFC analysis are separate and a finding

10

at one step does not necessarily equate to the same finding being made at a later step)). The Social Security Administration has reminded adjudicators that "the limitations identified in the 'paragraph B' and 'paragraph C' criteria are not an RFC assessment . . . ." Soc. Sec. Ruling 96-8p, 1996 WL 374184, at *4 (July 2, 1996).

At Step Two, ALJ Stanley analyzed Wardlow's alleged impairments of "adjustment disorder, unspecified anxiety disorder/generalized anxiety disorder, and conversion disorder" under the broad functional areas of mental functioning set out in the Social Security Administration's Listing of Impairments. (Tr. 15). These broad functional areas are known as the "paragraph B" criteria. (*Id.*). ALJ Stanley thoroughly reviewed the evidence of record, including the State Agency psychologists' findings of no severe mental impairments; Dr. Allaham's finding of no evidence of psychiatric disability and encouragement that Wardlow return to work; that Wardlow had no psychiatric hospitalizations or crisis stabilization and had no advanced mental-health treatment history; that Wardlow had largely unremarkable mental status evaluations; and Wardlow's reports of self-sufficient daily activities. (Tr. 16). He ultimately concluded that Wardlow does not experience more than mild limitations in any of the "paragraph B" criteria because "the evidence does not otherwise indicate that there is more than a minimal limitation in the claimant's ability to do basic work activities." (Tr. 16).

ALJ Stanley was not required to include any mental limitations in Wardlow's RFC determination solely because he previously found she had mild limitations in certain areas of Paragraph B functioning. But regardless, ALJ Stanley's final sentence in his Step Two analysis specifically indicates he considered Wardlow's mild limitations under the 'paragraph B' criteria in forming his RFC determination. (Tr. 16 ("The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the 'paragraph B' mental function

11

analysis.")). For these reasons, the Court finds ALJ Stanley's analysis of Wardlow's mental impairments at both Step Two and in the RFC are supported by substantial evidence in the record.

## **ORDER**

Based on the above analysis, the Court finds the Commissioner's decision is supported by substantial evidence in the record and complies with the applicable regulations. **IT IS THEREFORE ORDERED** that the final decision of the Commissioner is **AFFIRMED.**

This is a final and appealable Order and there is no just cause for delay.

Regina S. Edwards, Magistrate Judge
United States District Court

May 27, 2022

Copies:         Counsel of Record